# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | Case No. 1:15-cv-01036-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED** |
| v. | |
| RAQUEL ORTIZ REYES, individually and d/b/a Los Reyes Mexican Food; RAUL REYES, individually and d/b/a Los Reyes Mexican Food, | (Doc. No. 24) |
| | **OBJECTIONS DUE: 21 DAYS** |
| Defendants. | |

## I. INTRODUCTION

On October 28, 2015, Plaintiff J&J Sports Productions, Inc. ("Plaintiff") filed a notice of Defendants Raquel Ortiz Reyes d/b/a Los Reyes Mexican Food and Raul Reyes d/b/a Los Reyes Mexican Food ("Defendants") filing of a voluntary petition seeking protection from creditors in bankruptcy in the United States Bankruptcy Court of the Eastern District of California. (Doc. 22, Exh. 1 (Bankruptcy Petition # 15-14159).) On October 29, 2015, the Court granted Plaintiff's request to stay the litigation pending disposition of Plaintiff's claims against Defendants in bankruptcy. (Doc. 23.) On November 9, 2015, Plaintiff filed a motion for default judgment against Defendants. (Doc. 24.) Because Defendants' bankruptcy proceeding and the associated automatic stay of proceedings were still ongoing at the time Plaintiff filed its motion for default

judgment, the motion was held in abeyance and the hearing was vacated. (Doc. 26.) Plaintiff was ordered to re-notice its motion for default judgment. (Doc. 26.)

On December 9, 2015, Plaintiff re-filed its motion for default judgment as to all Defendants. (Doc. 27.) No opposition to Plaintiff's motion was filed. (*See* Docket.) The Court has reviewed the motion and supporting documentation and has determined that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g); as such, the hearing on the motion is vacated.

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED against Defendants in the amount of $3,800.

## II.   FACTUAL BACKGROUND

On July 7, 2015, Plaintiff filed a complaint pursuant to Title 47 U.S.C. § 553 *et seq.*, 47 U.S.C. § 605 *et seq.*, and Cal. Bus. & Prac. § 17200. (Doc. 1 ("Complaint").) The complaint seeks an award of statutory damages, costs of suit, attorneys' fees, restitution, punitive damages, and prospective injunctive relief. (Compl.)

As alleged in the Complaint and as sworn to by Affiant Joseph M. Gagliardi, President of J&J Sports Productions, Inc., Plaintiff is an international distributor of sports and entertainment programming, and secured the domestic commercial exhibition rights to broadcast the *"Honor + Glory" Saul Alvarez v. Erislandy Lara Championship Fight Program* (the "Program") telecast nationwide on Saturday, July 12, 2014. (Compl., ¶ 18; Doc. 27-4, ¶¶ 4-5 ("Gagliardi Affadavit").) Plaintiff entered into sublicensing agreements granting public exhibition rights to various commercial entities throughout the State of California. (Compl., ¶ 15; Gagliardi Aff., ¶ 5.) In California, the Program was legally available to commercial establishments only through an agreement with Plaintiff. (Gagliardi Aff., ¶ 6.) Plaintiff expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to these commercial entities. (Compl., ¶ 20; Gagliardi Aff.)

On Saturday, July 12, 2014, Jeff Lang ("Lang"), entered Defendants' establishment, Los Reyes Mexican Food (the "Restaurant"), in Coalinga, California, at approximately 9:10 p.m. (Doc. 27-3 ("Lang Declaration"), p. 2.) He noted that the Restaurant had a total of two flat-screen

2

television sets, both of which were showing the Program.  (Lang Decl., p. 2.)  Plaintiff alleges Defendants unlawfully intercepted the Program, and intentionally exhibited it for the purpose of direct or indirect commercial advantage.  (Compl., ¶¶ 21-22.)

Lang performed a headcount while at the Restaurant, counted "at least 70 patrons inside the restaurant," and estimated the capacity of the Restaurant to be approximately 90-100.  (Lang Decl., p. 3.)  Lang does not state whether Defendants charged a cover to enter the Restaurant while the Program was shown.  (*See* Lang Decl., pp. 2-3.)

Plaintiff further alleges Defendants knowingly and unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the Program at the time of its transmission at the commercial establishment owned and operated by Defendants.  (Compl., ¶ 21.)  Plaintiff alleges Defendants did so willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain, in violation of 47 U.S.C. § 605, *et seq.*  (Compl., ¶ 22.)  Plaintiff seeks statutory damages for each violation in the amount of $10,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), statutory damages for each willful violation in the amount of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), statutory damages for each violation in the amount of $10,000 pursuant to 47 U.S.C. § 553(c)(3)(A)(ii), statutory damages for each violation in the amount of $50,000 pursuant to 47 U.S.C. § 553(c)(3)(B), compensatory damages for conversion, and attorneys' fees and costs pursuant to 47 U.S.C. §§ 553(c)(2)(C) and 605(e)(3)(B)(iii) and Cal. Bus. & Prof. Code § 17200.  (Comp., ¶¶ 26, 31, 35, 44-45.)

Defendants Raquel Ortiz Reyes and Raul Reyes were served with the Complaint by personal service at 257 E. Elm Avenue, Coalinga, California, on September 18, 2015, but did not file responsive pleadings.  (Docs. 14; 16.)  Plaintiff requested that the Clerk of Court enter default against Defendants and the Clerk entered default against Defendants on October 19, 2015.  (Docs. 17-19.)

On October 28, 2015, Plaintiff filed a Notice of Defendants' Bankruptcy, notifying the Court that Defendants had filed a Voluntary Petition seeking protecting from creditors in bankruptcy in the United States Bankruptcy Court of the Eastern District of California.  (*See* Doc. 22, Exh. 2 (Bankruptcy Petition # 15-14159).)  The Court issued an order staying litigation

pending resolution of Defendants' bankruptcy petition. (Doc. 23.) On November 9, 2015, Plaintiff filed a motion for default judgment against Defendants. (Doc. 24.)

Defendants' bankruptcy proceeding and the associated automatic stay of proceedings, however, were still ongoing when Plaintiff filed its motion for default judgment. (Doc. 26, citing U.S.C. § 362(a)(1).) Although normally Plaintiff's motion for default judgment would be "deemed withdrawn" due to the automatic stay imposed by Defendants' bankruptcy filing, Defendant's bankruptcy case had been dismissed on November 13, 2015, for failure to timely file documents, and closed on November 4, 2015. The Court therefore held Plaintiff's motion for default judgment in abeyance and ordered it to be re-noticed, rather than deeming it withdrawn. (Doc. 26.) On December 9, 2015, Plaintiff re-filed and re-noticed its motion for default judgment against Defendants, which is currently pending before the Court. (Doc. 27.)

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are

4

legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

### IV.   DISCUSSION

**A.   The *Eitel* Factors Favor Entry of Default Judgment**

Many of the *Eitel* factors favor entry of default judgment in this case. Considering the first factor, if Plaintiff's application for default judgment were to be denied, it would leave Plaintiff without a remedy because Defendants have refused to litigate this action. Therefore, Plaintiff would be prejudiced if the Court were to deny its application for default judgment. This factor weighs in favor of default judgment. *See J & J Sports Prods., Inc. v. Al-Arshad*, No. 1:14-CV-01574-AWI-SKO, 2015 WL 3937513, at *3 (E.D. Cal. June 26, 2015) ("*Al-Arshad*"); *J & J Sports Prods., Inc. v. Concepcion*, No. C-10-CV-05092 WHA, 2011 WL 2220101 at *2 (N.D. Cal. June 7, 2011).

In contrast, Plaintiff's request for maximum statutory damages weighs against granting an entry of default judgment, particularly because the amount requested appears disproportionate to the harm alleged. *See Eitel*, 782 F.2d at 1472. Given that the Court may address the reasonableness of Plaintiff's request when deciding the question of damages, however, the Court need not deny default judgment on this factor alone. *See Al-Arshad*, 2015 WL 3937513 at *3 (citing *Joe Hand Promotions, Inc. v. Mujadidi*, No. C-11-CV-5570 EMC, 2012 WL 3537036, at *3 (N.D. Cal. Aug. 14, 2012) (noting that a request for maximum possible statutory damages "is not enough on its own to bar a default judgment . . . as it may be addressed by the Court in deciding what damages should be awarded, assuming that a default judgment is otherwise appropriate")).

As to the second and third *Eitel* factors, Plaintiff's substantive claims appear meritorious and its complaint is sufficiently pled. Plaintiff has alleged that Defendants violated two sections of Title 47 and the alleged activities of Defendants appear to have violated at least one of those

sections and Plaintiff has adequately stated a claim for conversion. Plaintiff has also set forth the applicable laws pursuant to which the court may provide relief. These factors weigh in favor of default judgment.

As to the fourth *Eitel* factor, the damages in this case cannot exceed the amounts specified in 47 U.S.C. § 605 (for reasons more fully explained below), and the maximum amount allowable for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000 and enhanced damages may not exceed $100,000. *See* 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii). Plaintiff is seeking $110,000 in statutory and enhanced damages and $1,400 in damages for conversion – *i.e.*, the amount Defendants would have been required to pay for the license. (Doc. 27-1, pp. 20-22.) Though Plaintiff seeks the maximum statutory damages possible, the relatively small sum of money at stake and the Court's discretion in awarding enhanced damages weigh in favor of granting default judgment.

As to the fifth factor, there is no dispute of material fact. Indications of a dispute of material fact can weigh against entry of default judgment. *See Eitel*, 782 F.2d at 1471-72. Here, Defendants have not disputed any of Plaintiff's contentions since Defendants failed to respond to either the Complaint or this motion, and all material facts pled in the Complaint are supported or explained by a declaration.

Considering the sixth factor, it is unlikely that default was the result of excusable neglect. This action was filed over eight months ago and the docket reveals that Defendants were properly noticed of this action by personal service over three months ago. (*See* Docs. 1; 14; 16.) In addition, Defendants were served with a copy of the motion for default judgment. (*See* Doc. 27-1, p. 23.) Defendants failed to respond despite these notifications. This factor weighs in favor of default judgment.

Finally, the seventh factor supports a default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate." *Al-Arshad*, 2015 WL 3937513 (citing *J & J Sports Prods., Inc. v. Concepcion*, 2011 U.S. Dist. LEXIS 60607, at *5 (N.D. Cal. June 7, 2011)). Therefore, this general policy is outweighed by the more specific considerations, and the motion to

enter default judgment should be granted.

Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Default Judgment be GRANTED.

**B.     Calculation of Damages**

Plaintiff requests $10,000 in statutory damages for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages for willful violation of 47 U.S.C. § 605(e)(3)(C)(ii). (*See* Doc. 27-1, pp. 8-19.) Plaintiff also seeks $1,400 in conversion damages, the minimum amount Defendants allegedly would have been required to pay had Defendants licensed the Program from Plaintiff. (Doc. 27-1, p. 20.)

**1.     Statutory Damages**

Plaintiff requests $10,000 in statutory damages as a result of the alleged violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), which prohibits any person from receiving or transmitting "wire or radio" signals except through authorized channels. (Doc. 27-1, pp. 8-9.) More specifically, the statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming.'" *Al-Arshad*, 2015 WL 3937513 at *4 (citing *J & J Sports Prods., Inc. v. Ro*, No. 09-CV-02860, 2010 WL 668065 at *3 (N.D. Cal. Feb. 19, 2010)). The statute provides statutory damages ranging from $1,000 to $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff states that Defendants violated Section 605 because "[w]ith full knowledge that the *Program* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, . . . Defendant[s] . . . did unlawfully intercept, received, publish, divulge, display, and/or exhibit the *Program* at the time of its transmission at their commercial establishment . . . ." (Compl. ¶ 21 (italics in original).) However, Plaintiff concedes that the actual means of signal transmission used, which is necessary to determine whether a Plaintiff should be awarded maximum statutory damages pursuant to Section 605, is unknown. (*See* Doc. 24-1, p. 8) (stating "Plaintiff cannot determine the precise means that the Defendant[s] used to receive the Program unlawfully"). *See also J & J Sports Prods., Inc. v. Deleon*, No. 5:13-CV-02030-EJD, 2014 WL 121711 at *3 (N.D. Cal. Jan. 13, 2014). Indeed, the

declaration of Plaintiff's affiant, Jeff Lang, does not state whether the establishment has a satellite dish or whether a cable box was affirmatively visible.  (*See* Lang Decl., pp. 2-3.)   Plaintiff contends the court has discretion to award significant damages "[e]ven in . . . cases of commercial signal piracy where there has been no egregious circumstances noted[.]"  (Doc. 27-1, p. 11.)

Plaintiff neither alleges that Defendants charged a cover for patrons to enter the Restaurant to watch the Program, nor that Defendants increased prices, or required food and drink purchases.  (*See* Lang Decl., pp. 2-3.)  Plaintiff also presents no evidence Defendants are repeat offenders.  There were approximately five dozen patrons in the establishment, and only two televisions broadcasting the Program.  (*See* Lang Decl., p. 2.)  Given these facts, the Court finds the minimum statutory damage amount to be appropriate.

Accordingly, the Court RECOMMENDS that Plaintiff be awarded the minimum statutory damages allowed in the amount of $1,000.

**2.      Enhanced Damages**

Plaintiff also requests enhanced damages pursuant to Section 605(e)(3)(C)(ii). (Doc. 24-1, pp. 14-19.)  This section authorizes the Court to award up to $100,000, in its discretion, upon finding that the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).

The Ninth Circuit has not set forth controlling factors to determine when enhanced damages are appropriate in this context, but various factors specific to this unique line of cases have been considered by district courts.  These include the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant."  *Concepcion*, 2011 WL 2220101, at * 4.  Enhanced damages have also been awarded when the defendant has violated Section 605 on previous occasions.  *See J & J Sports Prods., Inc. v. Paniagua*, 2011 WL 996257, at *2 (N.D. Cal. Mar 21, 2011).

The Court does not find that an award of maximum damages under Section 605 is appropriate here.  There is no evidence of significant "commercial advantage or private financial gain" in the instant case.  Plaintiff has presented evidence that Defendants had two television sets

in the Restaurant that displayed the Program, and Affiant Lang asserts that there were approximately 70 patrons present during his investigation. (*See* Lang Decl., p. 2.) However, as already discussed, there is no evidence that Defendants assessed a cover charge, required a minimum purchase from patrons, or had a special premium on food and drinks on the night of the fight. *See Kingvision Pay-PerView, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 n.2 (N.D. Cal. 2000) (stating that "[a]n establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers"). Plaintiff has also failed to present evidence that Defendants violated Section 605 on prior occasions.

In light of the above mentioned facts, the maximum enhanced damages award is not warranted. Although Plaintiff cites several out-of-district cases to support its request for the maximum enhanced damages possible (*see* Doc. 24-1, pp. 14-19), Plaintiff has not cited any binding precedent or identified any specific circumstances that justify such a high award here. Accordingly, the Court concludes that an award of $1,400 – the value of the commercial license to air the program – is more than adequate and just to compensate Plaintiff for lost profits and to deter Defendants' future infringement.

Therefore, the Court RECOMMENDS that Plaintiff be awarded $1,400 in enhanced damages.

**3.  Conversion**

Plaintiff also seeks $1,400 in damages for conversion under California Civil Code § 3336. (Doc. 24-1, p. 20.) Damages for conversion are based on the value of the property at the time of conversion. *See Tyrone Pac. Intern., Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981). Here, Plaintiff has shown that it owns the right to distribute the boxing match at issue and has properly alleged the misappropriation of that right to distribute the Program. As to damages, the "value of the property" was the minimum commercial license fee for the Program, or $1,400.

Accordingly, the Court RECOMMENDS that Plaintiff be awarded $1,400 in damages for conversion.

//

### IV.    Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's application for default judgment (Doc. 24) be GRANTED and judgment entered be entered in favor of Plaintiff and against Defendant in the amount of $3,800 in total damages.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **January 8, 2016**                             **/s/ Sheila K. Oberto**
                                                         UNITED STATES MAGISTRATE JUDGE